IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JANE DOE**       )<br>                            )<br>                            )         Case No.:<br>                            )<br>   **Plaintiff,**       )<br>        v.                 )<br>                            )<br>**LLOYD AUSTIN, III, SECRETARY**   )      Jury Trial Demanded<br>**OF DEFENSE, (DEFENSE**    )<br>**INTELLIGENCE AGENCY),**   )<br>7400 PENTAGON              )<br>WASHINGTON, DC 20301       )<br>                            )<br>   **Defendant.**       )<br>                            ) | |

### CIVIL COMPLAINT FOR MONETARY AND EQUITABLE RELIEF

Jane Doe ("Plaintiff"), by and through her undersigned counsel, alleges and states as follows:

### PRELIMINARY STATEMENT

1. Ms. Doe brings this action against the Department of Defense, Defense Intelligence Agency ("Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981 ("Section 1981").

2. Ms. Doe is Asian and of Chinese-American heritage. She was an employee of the Defense Intelligence Agency ("DIA") from March 28, 2011 through October 15, 2014, when the Defendant removed her based on her race, national origin, and in retaliation for engaging in protected activity.

3. In April 2012, Ms. Doe contacted the Defendant's Equal Employment Opportunity office to file an informal complaint, and later on June 14, 2012, a formal complaint,

|   |   |
|---|---|
|   | alleging that her colleagues subjected her to unlawful discrimination, retaliation, and a hostile work environment. |
| 4. | In June 2012, Ms. Doe participated in an agency-wide Office of Inspector General ("OIG") investigation into the treatment of Asian American and Arab American employees at DIA. |
| 5. | The Defendant and its employees retaliated against Ms. Doe for participating in these protected activities. The Defendant subjected her to multiple polygraph examinations; increased their workplace harassment against she and her partner; ordered her security clearance to be re-adjudicated; initiated a Counterintelligence Risk Assessment ("CIRA") against her; cancelled her deployment; placed her on Administrative Leave; revoked her security clearance; and ultimately removed her from federal service. |

## PARTIES

6. Plaintiff, Jane Doe, is a resident of the District of Columbia.

7. Lloyd Austin, III, Secretary for the Department of Defense, is named in his official capacity as the Defendant that formerly employed Ms. Doe.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. and 42 U.S.C. § 1981 ("Section 1981").

9. Venue is proper in this judicial district because Defendant is located here and the unlawful employment practices giving rise to this action were committed and occurred in this District.

## ADMINISTRATIVE EXHAUSTION

10. On or around April 13, 2012, Ms. Doe contacted an EEO Counselor to file a claim of discrimination against the Defendant. On or around June 14, 2012, Ms. Doe filed a class complaint against the Defendant that was ultimately adjudicated as her individual complaint of discrimination. Ms. Doe's complaint spent nearly 10 years in the administrative process.

11. Ms. Doe has exhausted her administrative remedies by timely filing this lawsuit within the time prescribed by the U.S. Equal Employment Opportunity Commission's ("EEOC") Office of Federal Operations, in its upholding of a Final Agency Decision, dated August 8, 2022.

## STATEMENT OF FACTS

12. Ms. Doe identifies as Chinese American.

13. On or about March 28, 2011, the Defendant employed Ms. Doe as an intern. On or about June 3, 2011, the Defendant offered Ms. Doe full-time employment as an Intelligence Officer, GG-09, step 1, which she accepted.

### November to December 2011 – Defendant's discriminatory acts

14. From November 16 – 20, 2011, Ms. Doe took a pre-scheduled vacation to Jamaica, which was authorized and approved by her supervisors and for which all required pre-travel forms were completed.

15. While on the trip, Ms. Doe participated in the Miss United Nations pageant. Uncertainty about her employment in 2011 led her to be a late entrant. By the time Ms. Doe entered the pageant, the representative for the United States had already been selected. The pageant organizers recommended that she participate as Miss

China; the previous year's Miss China had been an American citizen, someone that Ms. Doe knew personally.

16. Ms. Doe agreed to participate as Miss China based on her heritage, not her nationality, paying all the participation expenses out of her own personal funds and accepting no money from any domestic or foreign entity. She did not win the competition.

17. On November 22, 2011, two days after her return from Jamaica, Defendant's security official, Krisanne Lindenauer, interrogated Ms. Doe about her trip to Jamaica, asked why Ms. Doe had wanted to enter the defense industry, and asked if Ms. Doe would sit for an Issue Specific Polygraph ("ISP").

18. Ms. Doe agreed to the ISP. Ms. Doe stated that she had been on vacation, but did not mention the pageant for fear that she would be objectified in the workplace.

19. Six days later, security officials held another meeting with Ms. Doe, followed by another meeting four days after that.

20. At the interview on December 2, 2011, Defendant's security officials instructed Ms. Doe to provide the Defendant with an updated list of her foreign contacts, including social media contacts. However, agency guidelines for reporting social media contacts were not implemented at DIA until 2014.

21. Social media contacts were not required for all employees, and Ms. Doe's Caucasian colleagues who attended the same study abroad program at the Hopkins-Nanjing Center that Ms. Doe attended were not compelled by the Defendant to report their foreign social media contacts. Defendant enforced its guidelines arbitrarily and in a discriminatory manner towards Ms. Doe based on her race and national origin.

22. Following Ms. Doe's third meeting with Ms. Lindenauer, Ms. Doe sought out Ms. Lindenauer and informed her of the pageant and her participation as Miss China, explaining that such an activity was merely an extension of her prior passion for pageantry and an expression of her Chinese American identity.

23. Ms. Lindenauer angrily responded to Ms. Doe, chastising her for her participation. Ms. Lindenauer demanded that Ms. Doe write a Statement of Allegiance to the United States.

24. Defendant's insistence of taking and signing a Statement of Allegiance was part of a pattern of discriminatory, hostile and xenophobic actions by Defendant's employees that specifically held Asian and Heritage Americans to different standards than their White counterparts.

25. Defendant only required Statements of Allegiance for employees with dual citizenship, which did not even apply to Ms. Doe as she never held dual citizenship. Ms. Doe's citizenship prior to the U.S. had been with the United Kingdom, which she abandoned when she became a naturalized U.S. citizen.

26. Such a Statement of Allegiance for an American citizen with Chinese ancestry was borne out of the climate of paranoia and xenophobia prevalent in the workplace during this period that purposefully and knowingly held naturalized American citizens of Asian heritage, particularly Chinese Americans, to different and discriminatory standards.

27. Ms. Doe's supervisors and colleagues stated on the record that they had deep concerns about such a statement of allegiance, and that her race and national origin

were a factor in the discriminatory nature by which it was mandated, yet they told Ms. Doe that she would have to sign it in order to maintain her employment.

28. Ms. Doe wrote and signed the Statement of Allegiance on December 7, 2011.

**Continuous harassment and discrimination based on race and national origin in spring of 2012 and retaliation for participating in protected activities**

29. Defendant continued to subject Ms. Doe to harassment and discrimination in the spring of 2012.

30. On April 4, 2012, Ms. Doe was summoned to another meeting with security officials—the sixth meeting in as many months that she was compelled to attend. Ms. Doe was first asked to report on her partner, another employee of the Defendant, who is also of Chinese American descent.  Her partner was also under investigation by Defendant's security officials.

31. The officials informed Ms. Doe that classmates in her specialized training course had reported her as suspicious for arriving at an evening social gathering with other Asian Americans. All the Asian Americans at the event were fellow members of the Intelligence Community.  Yet, because of the xenophobia and discriminatory climate at the agency, a gathering of Asian American intelligence professionals was perceived as suspicious by Caucasian employees.

32. On April 6, 2012, Ms. Doe's partner, posted a topic on the DIA internal discussion board titled, "Asian Americans and Middle Eastern Americans in DX v. DAC-4" that outlined the discrimination, retaliation and numerous EEO violations within the DIA against its Asian American and Middle Eastern employees. The topic received 44 in-house responses that amounted to 98 printed pages and spread to other organizations within the Intelligence Community.

33. On the same day, April 6, Ms. Doe was ordered for a seventh interview with security officials and ordered to sign a second sworn statement, copies of which she was denied.

34. Ms. Doe, along with her partner, filed an informal complaint of discrimination with the Agency's Equal Employment Office ("EEO") on April 25, 2012. Other Asian Americans within the DIA experiencing similar discrimination and harassment had already, or soon would, file similar complaints with the DIA EEO.

35. On May 17, 2012, Ms. Doe participated in an initial EEO counseling meeting. A senior level EEO counselor was assigned to her case after the severity of issues facing Asian Americans at the agency was brought to the attention of upper management.

36. On May 18, 2012, the EEO counselor requested to speak to witnesses and that Ms. Doe identify the party responsible for discrimination and hostile work environment. Ms. Doe replied to the EEO counselor with the name of the responsible party, Ms. Lindenauer, the security official who had interrogated her seven times in seven months.

37. On May 23, 2012, the EEO counselor interviewed Ms. Lindenauer about allegations of discriminatory practices against Asian Americans at DIA. The next day, May 24, 2012, in direct retaliation for being identified as the responsible party in the EEO investigation, Ms. Lindenauer asked Ms. Doe to take another Issues Specific Polygraph.

38. Ms. Doe immediately reported this retaliatory act to the EEO counselor, who advised Ms. Doe to inform her managers, which she did. Ms. Doe met with her supervisors to discuss the retaliatory actions taken by Ms. Lindenauer. Ms. Doe's managers

recommended she comply with Ms. Lindenauer's request because the East Asia Division could not afford to have another employee on administrative leave. The East Asia Division repeatedly had personnel on administrative leave due to the continuous harassment, discrimination and scrutiny of Asian American employees.

39. On May 30, 2012, Ms. Doe responded to Ms. Lindenauer's request to submit to an ISP.

40. On June 5, 2012, Ms. Lindenauer was present while a polygrapher administered a grueling and aggressive polygraph to Ms. Doe at Lindenauer's direction. It was conducted in an off-site location and lasted for six hours. Ms. Doe passed with no reportable information.

41. Ms. Doe was informed, however, that she would be subjected to a counter-intelligence polygraph only two days later. On June 7, 2012, Defendant ran nine charts on Ms. Doe during this grueling second exam, which is an excessive amount of psychological stress levied on an employee with no personal conduct issues, no reportable information, and no detrimental comments from any of her supervisors. These aggressive and hostile acts were blatant acts of retaliation against Ms. Doe for participating in a protected activity of filing an informal complaint with the EEO office.

42. On June 21, 2012, Defendant began an investigation into the treatment of Asian Americans and Arab Americans in the workplace. On June 28, 2012, Ms. Doe participated in the OIG investigation by providing details of the discrimination against her along with supporting documentation.

43. On July 2, 2012, four days later, the Inspector General briefed senior management on the circumstances of the investigation. The Inspector General's report stated that on that date, July 2, 2012, the DIA Chief of Staff advised that the DIA Deputy Director, "wanted this issue resolved as soon as possible to include Office of Security adjudicating some of the complainants with security clearances."

44. On July 2, 2012, in a blatant act of retaliation, the DIA Chief of Staff sent an email on the same day, addressed to the Director, Deputy Director and General Counsel with her request to re-adjudicate the security clearances of the complainants, including Ms. Doe.

45. In a further act of retaliation, on July 5, 2012, the DIA Deputy Director initiated a Counterintelligence Risk Assessment ("CIRA") on Ms. Doe, despite Ms. Doe having passed multiple polygraphs with no reportable information, received positive performance reviews from her supervisors, and being cleared by a prior counterintelligence investigation.

46. On July 20, 2012, the OIG investigation interviewed Ms. Lindenauer. During the interview, Ms. Lindenauer was asked, "What can be done to reduce/eliminate the perception of harassing or discriminatory practices?" Ms. Lindenauer replied, "Nothing, maybe they should not be working in the IC [Intelligence Community]." Ms. Lindenauer was also asked, "At any time, and to anyone, did you refer to [name of her Asian American colleague] as your 'House Boy'?" Ms. Lindenauer responded affirmatively. Ms. Lindenauer was also asked by the OIG investigation, "Were you aware of a photo depicting an Asian man appearing to be sitting under a target with the caption 'Fear'? Ms. Lindenauer responded affirmatively.

47. On October 15, 2012, a memorandum was issued seeking results of the OIG investigation. The preliminary assessment stated that at least "two investigators assigned to DAC4b behavior was not conducive to good order and discipline expected of a government employee when they referred to [Asian American colleague] as a "house boy", "intern bitch", and present [Asian American colleague] with an offensive picture depicting an Asian male sitting under a target with the caption "[Asian American colleague] demonstrates his potential at the DAC4B pistol range." The memorandum further stated that "case law has shown that the agency still could be culpable from the actions of its employees who act inappropriately."

48. It is clear that Ms. Doe was operating within a continuous hostile work environment, was held to a different and discriminatory standard than her Caucasian colleagues, and was consistently retaliated against by Defendant with racist and xenophobic intentions.

49. Ms. Doe was told to report all of her foreign contacts on social media when no such policy existed at DIA and her Caucasian colleagues were not told to do so.

50. Ms. Doe was told to cease all contact with foreign nationals when no such policy existed at DIA and her Caucasian colleagues were not told to do so.

51. Ms. Doe was told that an HSBC bank account that she had opened in California and closed in April 2009 was a security concern. None of her Caucasian classmates who attended the same Hopkins-Nanjing Center, who had identical foreign contacts, developed while at the Hopkins-Nanjing Center, or who had bank accounts owned by overseas financial institutions, were subjected to such treatment.

52. Ms. Doe learned from the OIG investigation that Defendant's officials stated explicitly that she was being treated as she was as a result of her race and national origin. In the OIG report dated August 23, 2012, the OIG found that the rate of investigation of Asian Americans at the DIA exceeded their participation rate in the DIA workforce. Asian Americans were the only ethnic group at DIA to have a rate of investigations higher than their workforce participation rate.

53. In October 2016, during the course of the EEOC investigation, a DIA security official stated on record to EEOC investigators that Ms. Doe's race and national origin had been factors in the actions against her while she was employed by Defendant.

**Canceled deployment, placed on administrative leave and involuntarily separated**

54. On January 23, 2013, Ms. Doe's scheduled deployment was canceled abruptly without warning or explanation. Ms. Doe would learn in subsequent years that the polygraph examinations that she passed with no reportable information were used by Defendant as a pretext for Ms. Doe's canceled deployment to cover the retaliation for Ms. Doe's participation in protected activities as a protected class.

55. Ms. Doe requested to meet with the EEO office to report the cancellation as retaliatory, however the meeting was never arranged. Ms. Doe's partner requested to meet with DIA Director Michael Flynn, who had an open-door policy, to report the retaliatory deployment cancellations, but the meeting was never arranged. One week after requesting a meeting with Director Flynn, in another act of retaliation, Ms. Doe and her partner were placed on administrative leave without duties for 21 months.

56. Ms. Doe received a 203-page packet with Statement of Reasons (SOR), Acknowledgement of Receipt, Instructions for Responding to the SOR, Applicable

Personnel Security Guidelines, and Pertinent Investigative Documents. All government issued documents were confiscated.

57. Ms. Doe was instructed to report in each morning before being escorted out of the building by the Chief of DICAF. Her vehicle information was noted by DIA's law enforcement officers to bar it from entering DOD facilities.

58. On September 11, 2013, Ms. Doe received a Notice of Proposed Indefinite Suspension.

59. On October 23, 2013, Ms. Doe had her security clearance revoked. The letter of revocation cited a "well-documented pattern of questionable personal conduct over the **years**" even though Ms. Doe had only worked at the agency for 22 months before being placed on administrative leave, and had never been informally or formally reprimanded for any personal conduct issues.

60. Foreign influence, a concern for which she was positively adjudicated prior to joining the agency, was also cited as the pretense for revoking her security clearance. Ms. Doe's classmates from the Hopkins-Nanjing Center, who had the same foreign contacts as Ms. Doe, still remained employed by Defendant.

61. On March 5, 2014, Ms. Doe contacted the EEOC to inquire about the status of case number DIA-2012-00049. In another act of retaliation, five days later, on March 10, 2014, Defendant issued Ms. Doe a Notice of Proposed Removal.

62. Ms. Doe was removed from federal service on October 15, 2014.

63. On information and belief, Defendant has continued to retaliate against Plaintiff, by interfering with her employment prospects as well as her ability to obtain a security clearance for the last 10 years.

64. As a result of Defendant subjecting Ms. Doe to retaliation, discrimination and a hostile work environment, Ms. Doe has suffered monetary damages, including emotional distress, mental anguish, lost pay, lost benefits and harm to her professional reputation.

## COUNT 1

65. Ms. Doe repeats and realleges the allegations set forth in the above paragraphs.

66. Defendant subjected Ms. Doe to unlawful discrimination on the bases of her race and national origin by subjecting her to disparate treatment and removing her from federal service.

67. By and through its conduct, Defendant subjected Ms. Doe to unlawful discrimination based on her race and national origin in violation of Title VII of the Civil Rights Act of 1964.

68. Ms. Doe has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 2

69. Ms. Doe repeats and realleges the allegations set forth in the above paragraphs.

70. By and through its conduct, Defendant subjected Ms. Doe to an unlawful hostile work environment based on her race and national origin in violation of Title VII of the Civil Rights Act of 1964.

71. Ms. Doe has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 3

72. Ms. Doe repeats and realleges the allegations set forth in the above paragraphs.

73. By and through its conduct, Defendant subjected Ms. Doe to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964.

74. Ms. Doe has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 4

75. Ms. Doe repeats and realleges the allegations set forth in the above paragraphs.

76. Defendant subjected Ms. Doe to unlawful discrimination on the basis of her race by subjecting her to disparate treatment and removing her from federal service.

77. By and through its conduct, Defendant subjected Ms. Doe to unlawful discrimination based on her race in violation of 42 U.S.C. § 1981.

78. Ms. Doe has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## COUNT 5

79. Ms. Doe repeats and realleges the allegations set forth in the above paragraphs.

80. By and through its conduct, Defendant subjected Ms. Doe to unlawful retaliation in violation of 42 U.S.C. § 1981.

81. Ms. Doe has sustained damages consisting of emotional distress, pain and suffering, lost wages, and her losses are continuing.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment against Defendant on all Counts and award Plaintiff the following:

a. Lost pay and associated benefits;

b. Reinstatement or front pay and associated benefits;

c. Compensatory damages for pain and suffering as is awarded by a jury;

d. Reasonable attorney's fees and litigation costs;

e. Tax on any award; and

f. Any other relief as the Court deems fair and just.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts contained in the Complaint.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against the Defendant on all Counts and award Plaintiff lost wages and benefits, compensatory damages in the amount of $300,000, or in an amount to be determined at trial, for pain and suffering and emotional distress, pre- and post-judgment interest, costs, attorneys' fees, punitive damages, and any such other relief as is just and proper.

Date: November 11, 2022

Respectfully Submitted,

/s/  AMW

Ari Wilkenfeld [Bar No. 461063]
Nekeisha Campbell [Bar No. 1754385]
Alan Lescht & Associates, P.C.
1825 K Street NW, Suite 750
Washington, DC 20006
Tel (202) 315-1738
Fax (202) 463-6067
ari.wilkenfeld@leschtlaw.com
nekeisha.campbell@leschtlaw.com
*Counsel for Plaintiff*