## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

JANE DOE,

*Plaintiff,*

v.

DEPARTMENT OF DEFENSE, *et al.*,

*Defendants.*

Civil Action No. 22-03474

Chief Judge Beryl A. Howell

## <u>MEMORANDUM AND ORDER</u>

Plaintiff, a former intelligence officer for the Defense Intelligence Agency ("DIA"), Compl. ¶ 13, ECF No. 1, has moved to proceed pseudonymously in her instant suit bringing claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981 ("Section 1981"), claiming that she was subjected to invidious discrimination based on her race and national origin, and faced unlawful retaliation for protected activity, *see* Compl. ¶ 65–81.  Plaintiff moves to proceed under pseudonym because, as an anonymous intelligence officer who worked clandestinely for the DIA, she fears that revealing her name will put her and her loved ones' lives at risk to hostile foreign actors and prevent her from future work in the intelligence community.  Pl.'s Decl. ¶ 4-7, ECF No. 2-1. For the reasons set forth below, plaintiff's motion is granted, subject to any further consideration by the United States District Judge to whom this case is randomly assigned.[1]

---

[1]     *See* LCvR 40.7(f) (providing that the Chief Judge shall "hear and determine . . . motion[s] to file a pseudonymous complaint"); *see also* LCvR 5.1(h)(1) ("Absent statutory authority, no case or document may be sealed without an order from the Court.").

## I.      BACKGROUND

Plaintiff served as a Human Intelligence (HUMINT) Intelligence Officer in the clandestine operations division of the DIA, a subagency of the Department of Defense, from March 28, 2011 through October 15, 2014.  Pl.'s Decl. ¶ 3; Compl. ¶ 2, 15.  Her duties in this position "involved participating in clandestine operations in hostile foreign nations, and operating on behalf of the United States, with a particular focus on nations adversarial to the U.S."  Pl.'s Decl. ¶ 4.

Doe herself is a United States citizen of a specific non-Caucasian heritage, and she alleges that the DIA terminated her based on her race, national origin, and in retaliation for engaging in protected activity.  Compl. ¶ 2.  For example, Doe alleges that, one time after she returned to work from a pre-scheduled and pre-authorized vacation to Jamaica, where she participated in a beauty pageant, a DIA security official interrogated her about her trip and asked Doe to take an Issue Specific Polygraph ("ISP").  *Id.* ¶ 14-18.  The ISP was followed by further sit-down meetings, including a DIA official's insistence that Doe write a Statement of Allegiance to the United States—even though she is a naturalized U.S. citizen with no other foreign citizenships.  *Id.* ¶ 18-23, 25-26.  Plaintiff alleges the DIA also took discriminatory action against her for participating in gatherings of intelligence professionals from her specific heritage.  *Id.* ¶ 28-31.  Despite filing an informal complaint of discrimination with the Agency's Equal Employment Office, the DIA's harassment and discrimination against Doe persisted, with more meetings, ISPs (which she passed), and even a Counterintelligence Risk Assessment of Doe.  *Id.* ¶ 31-45.  Doe was involuntarily and indefinitely suspended, had her security clearance revoked, and eventually removed from federal service.  *Id.* ¶ 58-62.  Doe also alleges

that the DIA has continued to retaliate against her by interfering with her employment prospects and her ability to obtain a security clearance. *Id.* ¶ 63.

Because of her maltreatment at the DIA, plaintiff initiated the instant lawsuit against the Department of Defense and Secretary of Defense Lloyd Austin III, in his official capacity (collectively, "defendants").

## II.     LEGAL STANDARD

Generally, a complaint must state the names of the parties and address of the plaintiff. FED. R. CIV. P. 10(a) ("The title of the complaint must name all the parties."); FED. R. CIV. P. 11(a) (requiring "[e]very pleading, written motion, and other paper," including submissions by an unrepresented party, to "be signed" with "the signer's address, e-mail address, and telephone number"); D.D.C. LOCAL CIV. R. 5.1(c)(1) ("The first filing by or on behalf of a party shall have in the caption the name and full residence address of the party," and "[f]ailure to provide the address information within 30 days of filing may result in the dismissal of the case against the defendant.").  The Federal and Local Rules thus promote a "presumption in favor of disclosure [of litigants' identities], which stems from the 'general public interest in the openness of governmental processes,' . . . and, more specifically, from the tradition of open judicial proceedings." *In re Sealed Case*, 931 F.3d 92, 96 (D.C. Cir. 2019) (internal citations omitted) (quoting *Wash. Legal Found. v. U.S. Sentencing Comm'n*, 89 F.3d 897, 899 (D.C. Cir. 1996)).  That "presumption of openness in judicial proceedings is a bedrock principle of our judicial system." *In re Sealed Case*, 971 F.3d 324, 325 (D.C. Cir. 2020) (citing *Courthouse News Serv. v. Planet*, 947 F.3d 581, 589 (9th Cir. 2020)).  Accordingly, courts "generally require parties to a lawsuit to openly identify themselves to protect the public's legitimate interest in knowing all of the facts involved, including the identities of the parties." *Id.* at 326

(internal quotation marks and alterations omitted) (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, 1463 (D.C. Cir. 1995) (per curiam)).

Despite the presumption in favor of disclosure, the Federal Rules of Civil Procedure provide a narrow set of circumstances in which a party or nonparty's name and other filings may be redacted to protect privacy by limiting public access. *See, e.g.,* FED. R. CIV. P. 5.2 (a)(1)–(4) (requiring, "[u]nless the court orders otherwise," use of only initials for minors, and only partial birthdates and social-security, taxpayer-identification, and financial account numbers); FED. R. CIV. P. 5.2(e)(1) (authorizing court order, for good cause, to "require redaction of additional information").

Courts also, in special circumstances, may permit a party to proceed anonymously. A party seeking to do so, however, "bears the weighty burden of both demonstrating a concrete need for such secrecy, and identifying the consequences that would likely befall it if forced to proceed in its own name." *In re Sealed Case*, 971 F.3d at 326. Once that showing has been made, "the court must then 'balance the litigant's legitimate interest in anonymity against countervailing interests in full disclosure.'" *Id.* (quoting *In re Sealed Case*, 931 F.3d at 96). When weighing those concerns, five factors, initially drawn from *James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993), serve as "guideposts from which a court ought to begin its analysis." *In re Sealed Case*, 931 F.3d at 97. These five factors are:

> (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation or is to preserve privacy in a matter of [a] sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be protected; (4) whether the action is against a governmental or private party; and relatedly, (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously.

*Id.* (citing *James*, 6 F.3d at 238).

4

At the same time, a court must not simply "engage in a wooden exercise of ticking the five boxes." *Id.* Rather, the "balancing test is necessarily flexible and fact driven" and the five factors are "non-exhaustive." *In re Sealed Case*, 971 F.3d at 326. In exercising discretion "to grant the rare dispensation of anonymity . . . the court has 'a judicial duty to inquire into the circumstances of particular cases to determine whether the dispensation is warranted' . . . tak[ing] into account the risk of unfairness to the opposing party, as well the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Microsoft Corp.*, 56 F.3d at 1464 (quoting *James*, 6 F.3d at 238 (other internal citations and quotation marks omitted)).

## III.   DISCUSSION

At this early stage in the litigation, this Court is persuaded that plaintiff has demonstrated adequately that the public's presumptive interest in knowing the details of judicial litigation are outweighed by plaintiff's privacy interests and other national security interests.

First, as the description of plaintiff's claim makes clear, plaintiff does not seek to proceed under pseudonym "merely to avoid . . . annoyance and criticism," but to "preserve privacy in a matter of [a] sensitive and highly personal nature." *In re Sealed Case*, 931 F.3d at 97. Plaintiff is not necessarily worried about the substance of her claims being released to the public—it is out of fear that a hostile foreign actor will find out that she worked for the DIA as an intelligence officer, preventing her from operating effectively in the defense industry and putting herself and her loved ones in immediate danger of retaliation, capture, ransom, abduction, or death. *See* Pl.'s Decl. ¶¶ 4–6. In addition, should her identity as a clandestine U.S. intelligence officer become known, this may put at risk persons with whom she came in contact while on government assignment. The risk that such information will be aired in public,

and connected to plaintiff, often justifies the use of a pseudonym, such as in cases involving national security.  *See, e.g., Peary v. Goss*, 365 F. Supp. 2d 713, 716 n.1 (E.D. Va. 2005) (noting that plaintiff, a former CIA officer, "has adopted a pseudonym for the purpose of this litigation to preserve CIA operational security").  This first factor thus weighs heavily in favor of granting plaintiff's motion.

The second *Jones* factors weighs in favor of granting plaintiff's motion, though the third and fourth weighs slightly against.  Plaintiff makes clear in her affidavit that the release of her name could "pose[] a risk of retaliatory physical or mental harm to the requesting party or[,] even more critically, to innocent non-parties," *In re Sealed Case*, 931 F.3d at 97 (quoting *James*, 6 F.3d at 238).  Plaintiff, however, is an adult and does not allege the interests of minor children are at stake, so the third *Jones* factor does not apply here.  *See id.* As for the fourth factor, "there is a heightened public interest when an individual or entity files a suit against the government," *In re Sealed Case*, 971 F.3d at 329, as in this one.  While "[t]his public interest is intensified when . . . the party asking to proceed anonymously seeks to alter the operation of public law both as applied to it and, by virtue of the legal arguments presented, to other parties going forward," *id.*, that is not the situation here.  *Cf. id.* (describing public interest as "particularly great" where regulated entity sued government agency regarding "special exemptions" from statutory obligations).  Rather, plaintiff seeks to remedy her personal situation regarding the unlawful discrimination she faced during her time at the DIA.

Finally, defendants would suffer no "risk of unfairness" if plaintiff's motion were granted.  *See In re Sealed Case*, 931 F.3d at 97 (quoting *James*, 6 F.3d at 238).  Allowing plaintiff to proceed under pseudonym will have no impact on any private rights, as the defendants are both U.S. government actors, *see* Compl. at 1, and plaintiff has provided her

identifying information in a sealed declaration to her motion.  *See generally* Pl.'s Decl.  Thus, allowing plaintiff to proceed anonymously will not compromise defendants' ability to defend this action.

In sum, weighed against the minimal apparent interest in disclosure, plaintiff's significant and "legitimate interest in anonymity" at this early stage in the litigation is more than sufficient to overcome "countervailing interests in full disclosure."  *In re Sealed Case*, 931 F.3d at 97.  Any general presumption in favor of open proceedings or public interest in disclosing plaintiff's identity is significantly outweighed by the highly sensitive nature of the information implicated and the personal security risk that plaintiff, her loved ones and other non-parties could face if the information were made public.  *See Horowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir. 2005) ("If there is no public interest in the disclosure of certain information, 'something, even a modest privacy interest, outweighs nothing every time.'" (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989))).

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff's Motion to Proceed Under Pseudonym, ECF No. 2, is **GRANTED**, subject to any further consideration by the United States District Judge to whom this case is randomly assigned; it is further

**ORDERED** that plaintiff may proceed with the case using the pseudonym "Jane Doe"; it is further

**ORDERED** that plaintiff shall file, **by November 28, 2022**, a version of the instant motion with sensitive information redacted on the public docket; and it is further

**ORDERED** that defendants are prohibited from publicly disclosing plaintiff's identity or any personal identifying information that could lead to the identification of plaintiff by nonparties, except for the purposes of investigating the allegations contained in the Complaint and for preparing an answer or other dispositive motion in response.

**SO ORDERED.**

Date: November 14, 2022.

_____
BERYL A. HOWELL
Chief Judge